# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BRIAN LIEBERT and TIM SESTRICH,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Case No. 3:20-cv-00970 (VLB)** |
| | : | |
| **JESSE H. JONES, DOUG COLVARD,** | : | |
| **and SEAN VALLE,** | : | **December 23, 2020** |
| **Defendants.** | : | |

## <u>RULING ON DEFENDANTS' MOTION TO DISMISS, [ECF NO. 16]</u>

Before the Court is a Motion to Dismiss Plaintiffs Brian Liebert and Tim Sestrich's Complaint, [ECF No. 1], pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3), for lack of personal jurisdiction and improper venue, respectively, brought by Defendants Jesse H. Jones, Doug Colvard, and Sean Valle. [ECF No. 16].

Specifically, Defendants move to dismiss the First Count of Plaintiffs' Complaint, alleging legal malpractice on Defendants' part in the August 2019 sale of Plaintiffs' Taxaroo, Inc. tax business, on the basis that none of the defendants "live, work, practice law, or solicit clients in Connecticut," and "[a]ll of the work the Defendants did for Taxaroo, Inc. was done in North Carolina." [ECF No. 16-1 at 1]. "As the Defendants have no contacts with the State of Connecticut, personal jurisdiction cannot be established under Connecticut's long-arm statute or under principles of due process; thus, this case should be dismissed under Fed. R. Civ. Pro. 12(b)(2) or in the alternative, the case should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(3) for improper venue." *Id.* at 2.

For the reasons set forth herein, Defendants' Motion to Dismiss will be DENIED, but the Court *sua sponte* transfers this case to the Eastern District of North Carolina.

## I. LEGAL STANDARD

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). A plaintiff facing a Rule 12(b)(2) motion to dismiss made before any discovery only needs to allege facts constituting a *prima facie* showing of personal jurisdiction. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018); *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 84 (1st Cir. 1997); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). A plaintiff can make the requisite factual showing through its "own affidavits and supporting materials" which the Court may review and consider. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981); *see also Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) ("The most commonly used method for determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of fact essential to personal jurisdiction.").

"[T]he amenability of a foreign [defendant] to suit in a federal court in a diversity action is determined in accordance with the law of the state where the

court sits." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc); *accord Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). Accordingly, this Court applies the law of the State of Connecticut. In order to ascertain whether a court has personal jurisdiction, Connecticut applies a two-step analysis. A court must first look to the forum State's long-arm statute and determine whether that statute reaches the foreign defendant. If the long-arm statute authorizes personal jurisdiction over a defendant, the court must then decide whether the exercise of jurisdiction over that party offends due process. *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (citing *Greene v. Sha-Na-Na*, 637 F. Supp. 591, 599 (D. Conn. 1986)).

Connecticut's long-arm statute provides, in relevant part, that a court can exercise personal jurisdiction over a non-resident individual who:

> (1) transacts any business within the state; (2) commits a tortious act within the state . . . ; [or] (3) commits a tortious act outside the state causing injury to person or property within the state. . . if such a person or agent (A) regularly does or solicits business, or engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Conn. Gen. Stat. § 52-59b(a).

For a civil action brought in federal district court, proper venue is defined by 28 U.S.C. § 1391(b). That statute provides venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial

3

**district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.**

28 U.S.C. § 1391(b).  Once venue is challenged, the burden of establishing proper venue rests with the plaintiff.  *See Indymac Mortg. Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001); *Powell v. Monarch Recovery Mgmt., Inc.*, No. 15-cv-2162 (MKB), 2016 WL 8711210, at *1 (E.D.N.Y. Jan. 22, 2016); *Delgado v. Villanueva*, No. 12 CIV. 3113 (JMF), 2013 WL 3009649, at *2 (S.D.N.Y. June 18, 2013).  "When considering allegations related to venue, the Court may consider affidavits and other documentary evidence."  *Torus Ins. (UK) Ltd. v. Coastal Towing, LLC*, No. 14-CV-9785-LTS-JFC, 2015 WL 2070235, at *2 (S.D.N.Y. May 5, 2015) (citing *Marine Midland Bank*, 664 F.2d at 904).

Where venue is improper, a court may transfer the case to another district in the interest of justice.  28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

## II.  ALLEGATIONS

In reviewing a motion to dismiss, the Court considers the allegations of the complaint to be true.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

4

At all relevant times, Plaintiff Brian Liebert was a resident of the State of Connecticut, and Plaintiff Tim Sestrich was a resident of the State of Pennsylvania.  [ECF No. 1 (Compl.) ¶¶ 1, 2].

At all relevant times, Fourscore Business Law ("Fourscore") was a North Carolina law firm, licensed to practice law in North Carolina, with an office in Raleigh, North Carolina.  *Id.* ¶ 3.

At all relevant times, Defendant Jesse H. Jones was an attorney licensed to practice law in North Carolina, was the owner of Fourscore, and represented Plaintiffs in the sale of their Taxaroo, Inc. tax business to Happy Tax Holding Corporation.  *Id.* ¶ 4.

At all relevant times, Defendants Doug Colvard and Sean Valle were attorneys duly licensed to practice law in North Carolina, practiced law at Foursquare, and joined Defendant Jones in representing Plaintiffs in the sale of their Taxaroo, Inc. tax business to Happy Tax Holding Corporation.  *Id.* ¶¶ 5, 6.

The Plaintiffs were the owners of Taxaroo, Inc., which is a Delaware Corporation.  *Id.* ¶ 7.

On or about July 24, 2019, Defendants undertook to represent Plaintiffs in the sale of Taxaroo, Inc. to Happy Tax Holding Corporation.  *Id.* ¶ 9.

On August 23, 2019, Plaintiffs entered into an agreement to sell Taxaroo, Inc. for $350,000 plus other consideration not relevant to the instant lawsuit, to Happy Tax Holding Corporation.  *Id.* ¶ 8.

"The $350,000 was payable as follows: (a) $50,000 upon signing the agreement, which was paid; (b) $100,000 on or before April 30, 2020, which was not paid; (c) $50,000 on or before April 30, 2021, which was not paid; (d) $50,000 on or before April 30, 2022, which was not paid; and two (2) convertible Promissory Notes totaling $100,000, which were not paid." *Id.*

The "Defendants failed to include an acceleration clause of any of the said notes totaling $300,000." *Id.* ¶ 10.

The Plaintiffs in the sale of Taxaroo, Inc. "were granted a UCC security interest in the assets of Taxaroo, Inc., as well as the shares of stock of Taxaroo, Inc." *Id.* ¶ 11.

The "Defendants failed to perfect said lien in a timely fashion allowing prior liens to be filed on the collateral set forth in paragraph 10 of the Complaint." *Id.* ¶ 12.

The "collateral which was to be secured by the UCC filing had a value in excess of $850,000." *Id.* ¶ 13.

### III.  ADDITIONAL UNDISPUTED MATERIAL FACTS

The Court notes the following additional undisputed material facts based primarily on the sworn affidavits of the Parties, [ECF Nos. 16-2 at 1-5 (Jesse H. Jones Aff.); 16-3 at 1-5 (Douglas Colvard Aff.); 16-4 at 1-5 (Sean Valle Aff.); 24-3 at 1-3 (Brian Liebert Aff.)], but also on admissions of the Plaintiffs in their Opposition to Defendants' Motion to Dismiss, [ECF No. 24], and the Court's

review of both Taxaroo, Inc.'s engagement agreement with Foursquare, [ECF No. 16-2 at 6-12 ("Eng. Ltr.")], and the Stock Purchase Agreement between Happy Tax Holding Corporation and Taxaroo, Inc., and Plaintiffs Brian Liebert and Tim Sestrich.  [ECF No. 24-1 ("Stock Purchase Ag.")].

On or around July 26, 2019, Justin Truesdale, Esq., an attorney at the law firm of Smith Anderson located in Raleigh, North Carolina, contacted Defendant Jones regarding a referral of a potential new client, Taxaroo, Inc.  Jones Aff. ¶ 8. A retainer letter was sent by Defendant Jones via email to Plaintiff Liebert as representative of Taxaroo, Inc.  *Id.* ¶ 9.  Plaintiff Liebert electronically signed the retainer letter on July 26, 2019, setting forth that Taxaroo, Inc. was the client of Fourscore.  Eng. Ltr. at 3.

Taxaroo, Inc. is a Delaware corporation, Compl. ¶ 7, with its principal place of business in the State of New York, [ECF No. 24 at 17], and "a business address . . . c/o Brian Liebert, 28 Colony Road, Westport, Connecticut."  Liebert Aff. ¶ 2. Happy Tax Holding Corporation is a Delaware Corporation.  Jones Aff. ¶ 11.

Defendants' scope of work for Taxaroo, Inc. "was limited to the review, revision and advice pertaining to proposed sale documents provided by Happy Tax Holding Corp. . . . to Taxaroo, Inc."  *Id.*  Defendants never met with Plaintiffs or any other representative of Taxaroo Inc., and never met with, spoke with, nor corresponded with any representative of Happy Tax Holding Corporation.  *Id.* ¶¶ 13, 14.

7

During Fourscore's representation of Taxaroo, Inc., Defendants were provided with access to Plaintiffs' "Dropbox" server, which allowed Defendants to access the Taxaroo, Inc. to Happy Tax Holding Corporation purchase and sale agreement.   Liebert Aff. ¶ 7.   "Dropbox is a file hosting service operated by Dropbox, Inc. headquartered in San Francisco with 12 offices, none located in Connecticut."  [ECF No. 27 at 2 n.3].

Defendants Jones and Colvard provided edits to and comments on the Taxaroo, Inc. to Happy Tax Holding Corporation purchase and sale agreement to Taxaroo, Inc. six separate times in the months of July and August 2019, via email. Liebert Aff. ¶ 6.

Defendants were not asked and did not conduct any work surrounding the conditions of the Taxaroo, Inc. to Happy Tax Holding Corporation sale closing; nor did they prepare the signature pages.  Jones Aff. ¶ 16; Colvard Aff. ¶ 14; Valle Aff. ¶ 14.  Taxaroo, Inc. did not request that Defendants attend the closing; and none of the Defendants attended the closing.  *Id*.  Taxaroo, Inc. did not provide the Defendants with final executed sale documents contemporaneously with the closing.  Jones Aff. ¶ 17; Colvard Aff. ¶ 15, Valle Aff. ¶ 15.  Taxaroo, Inc., via an email by Plaintiff Liebert, requested Defendants' final invoice on August 23, 2019. Jones Aff. ¶ 15; Colvard Aff. ¶ 13; Valle Aff. ¶ 13.

Defendants also provided legal advice to Taxaroo, Inc. three times in April and May 2020.  Liebert Aff. ¶ 6.

8

Fourscore's principal office is in Raleigh, North Carolina.  Jones Aff. ¶ 5. All of the work conducted by Defendants in reviewing documents concerning the sale of Taxaroo, Inc. to Happy Tax Holding Corporation was done in Raleigh, North Carolina.  Jones Aff. ¶ 18; Colvard Aff. ¶ 16; Valle Aff. ¶ 16.

None of the defendants live, work or own or lease property in the State of Connecticut.  Jones Aff. ¶¶ 21-25; Colvard Aff. ¶¶ 19-24; Valle Aff. ¶¶ 19-24.  None of the defendants practice law in Connecticut nor are licensed to practice law in Connecticut.  *Id.*  Neither Fourscore, nor any of the Defendants, solicit, advertise or use a referral service for clients from Connecticut.  Jones Aff. ¶ 20; Colvard Aff. ¶ 18; Valle Aff. ¶ 18.

Raleigh, North Carolina is physically located within the jurisdiction of the United States District Court for the Eastern District of North Carolina.  Pub. L. No. 94 § 244, 28 Stat. 274 (1894) (establishing the Eastern District of North Carolina at Raleigh, North Carolina).

## IV.  DISCUSSION

Defendants argue that under Connecticut's Long-Arm Statute personal jurisdiction cannot lie first because they did not transact any business in Connecticut, as required by Conn. Gen. Stat. § 52-59b(a)(1) (court can exercise personal jurisdiction over a non-resident individual who "transacts any business within the state.").  [ECF No. 16 at 7-10].  Defendants note that the Complaint does

**9**

not allege that they did so; rather, "[t]he only mention of Connecticut is that Liebert, a plaintiff, is a resident of the State." *Id.* at 7. Defendants argue that

> The Complaint acknowledges that each of the Defendants are residents of North Carolina, are licensed to practice law in North Carolina, and are operating a law firm located in North Carolina. (*Compl.* at ¶¶ 3-6). Further, as established by the Defendants' affidavits, none of the work done for Taxaroo, Inc. was done in Connecticut, none of the Defendants' live or work in Connecticut, none of the Defendants' have offices in Connecticut, practice law in Connecticut or hold licenses in Connecticut. (*Ex. A*, Jones Aff. at ¶¶ 18-26; *Ex. B*, Colvard Aff. at ¶¶ 16-24; *Ex. C.*, Valle Aff. at ¶¶ 16-24).

[ECF No. 16 at 7].

Defendants concede that "transacting any business" can include "a single purposeful business transaction," *id.* at 8 (quoting *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981)), but argue that "courts have consistently held that the transmission of communications between a non-resident defendant and a party within the jurisdiction does not, by itself, constitute the transaction of business within the state." *Id.* (citing *Vitale v. Catanese*, No. 3:11-cv-01831 (MPS), 2013 WL 3992394 at *3 (D. Conn. Aug. 2, 2013)). This result is the same, Defendants argue, in cases where the out-of-state defendants are attorneys communicating with their clients in Connecticut. *Id.* at 8-10 (citing cases).

Defendants summarize:

> Applying this law to the case at bar, there can be no personal jurisdiction over the Defendants in Connecticut when the affidavits establish that Defendants were hired by a Delaware corporation, based on a referral by a North Carolina attorney, to conduct work in North Carolina related to a transaction involving the sale of two Delaware corporations. There is no evidence of business conducted

**by Defendants in Connecticut.  Thus, the Plaintiffs cannot establish personal jurisdiction over [Defendants] pursuant to Conn. Gen. Stat. § 52-59(a)(1).**

**[ECF No. 16 at 10].**

**Plaintiffs counter that "Defendants are subject to the jurisdiction of this court as their legal representation of Plaintiffs constitutes the transaction of business triggering Connecticut's long arm statute."  [ECF No. 24 at 2].  The cases cited by Defendants are inapplicable to the case at bar, Plaintiffs argue, because they "entail some form of communication being transmitted into the state of Connecticut" that "did not constitute the transaction of business" because the communications were "purely incidental to the representation of the plaintiffs by the non-resident attorneys."  *Id.*  Here, however, Plaintiffs argue, "the communications that Defendants transmitted to Plaintiffs in connection with Plaintiffs' retention of Defendants was the *actual business activity* that Plaintiff's [sic] hired Defendants to perform."  *Id.* (emphasis in original).**

**Plaintiffs argue that the *Zartolas* court had "construed the term 'transacts any business' to embrace a single purposeful business transaction," and "[h]ere, there was not only a single purposeful business transaction but a series of communications between the parties in which Defendants dispensed substantive legal advice to Plaintiffs."  *Id.* at 5.**

**Noting that the *Zartolas* court had found the Connecticut legislature to have based the Connecticut long-arm statute on New York's version of the same,**

11

Plaintiffs cite two New York cases as establishing that Defendants' communications with Plaintiff meets the "transacts any business" standard. First, Plaintiffs cite *George Reiner & Co. v. Schwartz*, 363 N.E.2d 551 (N.Y. 1977), which held that a court could find personal jurisdiction over a defendant who had travelled to New York to negotiate and sign an employment contract that governed his job responsibilities while employed over the next four years in New England.  The only difference between the defendant in *George Reiner & Co.* and the Defendants here is that "Defendants [here] were never physically present in the state of Connecticut for the execution of the contract establishing the parties' relationship and out of which the Plaintiffs' cause of action arose," which matters little in today's "society [which is] increasingly focused on e-commerce."  [ECF No. 24 at 5-6].

Plaintiffs also cite *Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs.*, 850 N.E.2d 1140 (N.Y. 2006), which held that courts could find personal jurisdiction over "commercial actors and investors" who "us[ed] electronic and telegraphic means to project themselves into New York to conduct business transactions," and over the Defendant Board who "had engaged the plaintiff in a series of stock market trades."  [ECF No. 24 at 6].  Plaintiffs argue this is similar to the instant case, where Defendants communicated with Plaintiffs "in a series of electronic communications with respect to legal advice for which the parties had contracted

and whereby Defendants projected themselves into Connecticut to transact business." *Id.*

Plaintiffs summarize that "the communications from Defendants to Plaintiffs in Connecticut dispensing legal advice *were* the business to be transacted for which the parties entered into their legal engagement and therefore, sufficient to confer personal jurisdiction over the Defendants. These communications were not an incident of the parties' legal engagement [as in Defendants' cited cases]; rather, they were an integral part of the parties' legal engagement and, as such, constitute the transaction of business by Defendants in Connecticut." [ECF No. 24 at 9-10 (emphasis in original)].

Defendants reply that the Connecticut Supreme Court found in *Rosenblit v. Danaher*, 206 Conn. 125 (1988), that out-of-state attorneys representing Connecticut clients, even where the out-of-state attorney travels to Connecticut for an in-person meeting with Plaintiff, does not "constitute 'a single purposeful business transaction' sufficient to establish personal jurisdiction under *Zartolas*." [ECF No. 27 at 3]. Defendants argue that their connections to Connecticut "are even more tenuous than the attorney in *Rosenblit*" because "Taxaroo, Inc. was referred to the Defendants' law firm by a North Carolina attorney[,] [t]he Defendants were hired in North Carolina, conducted all work in North Carolina, and never visited Connecticut at any point in their representation of Taxaroo, Inc.

13

The *only* connection to Connecticut is the residence of *one* of the Plaintiffs."  *Id.* at 4 (emphasis in original).

Moreover, Defendants argue, Plaintiffs' reliance on *George Reiner & Co.* provides no support for personal jurisdiction, as it depended on that defendant's *physical presence* to support personal jurisdiction, which is absent here.  *Id.* at 4 (emphasis in original).  Plaintiffs' *Deutsche Bank* case fares no better, according to Defendants, because there defendant "was 'a sophisticated institutional trader' that knowingly initiated and pursued negotiations with a Deutsche Bank employee in New York, that ultimately culminated in the sale of $15 million in bonds in New York," and "[t]he court specifically distinguished a 'sophisticated institutional trader' from 'an out-of-state individual trader making a telephone call to a stockbroker in New York.'"  *Id.* at 5.  "In the case at bar, it was [Plaintiff] Liebert, as principal of Taxaroo, Inc., a Delaware Corporation, who contacted the North Carolina based law firm for representation, not the other way around.  If any parallel to Deutsche Bank can be drawn, it would be that Liebert, a CEO of a Delaware corporation, made the decision to hire a North Carolina law firm to advise Taxaroo, Inc. on its proposed sale.  By so doing, Liebert, a sophisticated businessman subjects himself to the jurisdiction of North Carolina."  *Id.* at 6.

Finally, Defendants cite the recent in-District *Callahan v. Wisdom* case, in which the court found that the non-resident Defendant consultant was not subject to personal jurisdiction not only because the "nature and quality" of the

14

consultant's contacts with Connecticut were lacking but also because "the fact that [Plaintiff] Callahan was located in Connecticut appears to have had no bearing on, or relationship to, the stated purpose of the arrangement—expanding the Company's global business.   [Plaintiff] Callahan's location was purely incidental."  [ECF No. 27 at 8 (citing *Callahan*, No. 3:19-cv-00350 (KAD), 2020 WL 2061882, at *7 (D. Conn. Apr. 29, 2020)].   "Like in Callahan, the residence of Liebert was *incidental* to the relationship of Liebert and Sestrich, as principals, of Taxaroo, Inc., a Delaware Corp. with a principal place of business in New York, retaining lawyers from a North Carolina law firm to advise them regarding the proposed sale of Taxaroo, Inc. to Happy Tax Holding Corp., another Delaware Corp."  *Id.* (emphasis in original).

Defendants summarize, "as there is <u>no</u> evidence supporting that the nonresident Defendants in this matter engaged in a 'purposeful Connecticut related activity' by which they . . . 'invoked the benefits and protections of Connecticut's laws,' the court should grant Defendants' Motion to Dismiss for lack of personal jurisdiction."  *Id.* at 9 (emphasis in original).  The Court agrees with Defendants.

First, the *Zartolas* court's holding that a "single purposeful business transaction" may be enough to constitute "transacting any business" clearly did not mean to imply that *any* business transaction would suffice, as Plaintiffs seem to imply.  184 Conn. at 474.  Rather, *Zartolas* so held because there the out-of-

15

state defendants executed a warranty deed pursuant to the sale of Connecticut real property, which the Court held was "a legal act of a most serious nature." *Id.* at 475. "By owning land in Connecticut the defendants invoked the benefits and protection of Connecticut's laws of real property, including as an incident of ownership the right to sell the property. If the defendants breached their warranties, the breach occurred because of acts committed here. The warranties in the deed clearly anticipate litigation in Connecticut, which is the only forum that can determine title to Connecticut land." *Id.* at 475-76. Here, by contrast, Plaintiffs point to no "benefits" or protections of Connecticut law that Defendants have sought to invoke, no breach that occurred because of acts committed in Connecticut, and Plaintiffs admit that the District of Connecticut is not the only forum that can determine the rights of the parties. [ECF No. 24 at 13 (stating that in addition to Connecticut, New York, Delaware, and North Carolina would be proper fora)].

Moreover, the Court agrees with Defendants that Plaintiffs cited *George Reiner & Co.* case is inapposite, relying as it did on Defendant's physical presence in New York to negotiate and execute a four-year employment contract that would dictate the terms of his employment pursuant to New York law. Plaintiffs cited *Deutsche Bank* case is also inapposite, relying as it did on an out-of-state institutional investor who knowingly initiated and pursued negotiations

16

with Deutsche Bank that resulted in the purchase of over $100 million in bonds pursuant to New York law.

Here, the only connection to Connecticut is that one of the two Plaintiffs happens to live in Connecticut, the other being a resident of Pennsylvania, and the Connecticut Plaintiff received communications, on behalf of a Delaware corporation, consisting of edits to and comments on a stock purchase agreement between two Delaware corporations.  As Judge Dooley found in *Callahan*, "the fact that [Plaintiff] was located in Connecticut appears to have had no bearing on, or relationship to, the stated purpose of the arrangement. . . .  [Plaintiff's] location was purely incidental."  2020 WL 2061882, at *7.

In sum, the Court finds that personal jurisdiction is lacking under the Connecticut long-arm statute, Conn. Gen. Stat. 52-59b(a)(1), because Defendants did not transact business in the State of Connecticut.

Defendants argue next that personal jurisdiction is lacking under the second part of Connecticut's long-arm statute, Conn. Gen. Stat. 52-59b(a)(2), because Defendants did not commit a tortious act in Connecticut.  [ECF No. 16 at 10-11].  Plaintiffs do not oppose Defendants on this point, effectively conceding it, and so the Court finds that Plaintiffs have not met their burden to establish personal jurisdiction under this prong of the Connecticut long-arm statute.

Lastly, Defendants argue that personal jurisdiction is lacking under the third part of Connecticut's long-arm statute, Conn. Gen. Stat. 52-59b(a)(3),

17

because Defendants have not committed a tortious act outside of Connecticut causing injury inside Connecticut, for two reasons.

First, Defendants argue, "courts generally apply a 'situs-of-injury test' which asks the court to locate the original event which caused the injury," [ECF No. 16-1 at 12 (citing *Robb v. Robb*, 620 F. Supp. 2d 282, 286 (D. Conn. 2009)], or where "the critical events associated with the dispute took place," *id.* (citing *Statek Corp. v. Coudert Bros. LLP*, No. 3:07-cv-00456 (SRU), 2018 WL 834227, at *16 (D. Conn. Feb. 12, 2018)), and, "[i]n a legal malpractice case, "[t]he situs of injury is the location . . . [where] the alleged legal malpractice occurred." *Id.* (citing *Statek*, 2018 WL 834227, at *16). "In evaluating the critical events for the purposes of jurisdiction, the plaintiff's residence or domicile in a state, in and of itself, is not a sufficient predicate for the exercise of jurisdiction." *Id.* (citing *Greene*, 637 F. Supp. at 597). "Thus, in the case at bar," Defendants summarize, "where the Complaint and affidavits establish that all activities related to the alleged malpractice occurred solely in North Carolina, the situs of the alleged injury is North Carolina." *Id.*

Moreover, under subsection (a)(3), the defendant must either have engaged in a persistent course of conduct, or derived significant revenue from services rendered in Connecticut, neither of which is true here, according to Defendants. "The affidavits establish that none of the Defendants have worked in Connecticut, practiced law in Connecticut, are licensed in Connecticut, maintain an office in

Connecticut, or solicit, advertise or use a referral system for Connecticut."  *Id.* at 12-13.  "Accordingly, Plaintiffs cannot establish personal jurisdiction via Conn. Gen. Stat. §52- 59[b](a)(3)."  [ECF No. 16-1 at 13].

Plaintiffs respond that Defendants' use of the internet to transmit their faulty analysis to Plaintiffs caused Plaintiffs' injury in Connecticut, which is therefore the situs of the injury.  [ECF No. 24 at 10-11 (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 32 (2d Cir. 2010) (holding that use of the internet affects situs of injury inquiry because of the "speed and ease with which the internet may allow out of state actions to cause injury")].

The Court agrees with Defendants that Plaintiffs have failed to establish personal jurisdiction under Conn. Gen. Stat. § 52- 59b(a)(3).  First, Plaintiffs fail to even address the second part of that subsection, which requires a finding that a defendant "(A) regularly does or solicits business, or engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  *Id.*  Here, there are no facts or even allegations suggesting that Defendants regularly do or solicit business in Connecticut or derive substantial revenue from the state.  Second, Plaintiffs cited *Penguin (USA)* case, which indicates that use of the internet is a factor to be considered in determining situs of the injury, does not contradict Defendants'

cited cases holding that the situs of the injury is where the critical events causing the injury occurred; here, they all occurred in North Carolina.

In sum, the Court holds that Plaintiffs have failed to meet their burden to establish a *prima facie* case that the Court has personal jurisdiction over Defendants pursuant to Connecticut's long-arm statute.  Because of this, the Court need not address whether personal jurisdiction offends due process constitutional jurisdiction concerns.  *See Callahan*, 2020 WL 2061882, at *4 ("The first inquiry must be whether [Connecticut's] long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case.  Only if [the Court] find[s] the statute to be applicable do[es it] reach the question whether it would offend due process to assert jurisdiction.") (quoting *West World Media, LLC v. Ikamobile Ltd.*, 809 F. Supp. 2d 26, 30 (D. Conn. 2011) (quoting *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 250 (1983)).

However, even assuming that Connecticut's long-arm statute authorized the exercise of personal jurisdiction in this case, it is doubtful that such jurisdiction would be constitutionally permissible.

For the Court's exercise of personal jurisdiction to satisfy due process, the non-resident must have sufficient "minimum contacts" with the forum state "such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'"  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945)).  "[T]he requisite 'minimum contacts' must be such that Defendant can 'reasonably anticipate' being haled into court in the forum state—importantly, 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 495 (D. Conn. 2006) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The Supreme Court has described two related aspects of the minimum contacts inquiry: "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)).  "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.* at 285.

Under this analysis, it is clear that Defendants' only contact with Connecticut was the "incidental" fact that one of the plaintiffs happened to reside there.  That is not enough to satisfy due process, since, as mentioned, Defendants did not invoke the benefits and protections of Connecticut's laws.

Even if Defendants had sufficient minimum contacts with Connecticut, "[the Court] must also determine whether the exercise of personal jurisdiction is reasonable under the Due Process Clause."  *MacDermid, Inc. v. Deiter*, 702 F.3d

725, 730 (2d Cir. 2012). "The Supreme Court and [this] Court consider five factors

for determining whether an exercise of jurisdiction is reasonable:

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 730–31 (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173

(2d Cir. 2010)).

In considering these factors, the Court holds they weigh against finding the

exercise of jurisdiction to be reasonable. Litigating in Connecticut would be a

great burden to the Defendants, who have no contact with the state whatsoever

apart from this case. Connecticut has little interest in this case since the

transaction involved a Pennsylvania co-Plaintiff and two Delaware companies.

Conversely, North Carolina does have an interest since the work was done there

by attorneys it licenses. One Plaintiff is in Connecticut, but ultimate relief cannot

be obtained in Connecticut since any judgment would have to be executed in

North Carolina. Additionally, North Carolina's code of professional responsibility

should apply and is best interpreted by North Carolina lawyers. Defendants were

not practicing law in Connecticut and could not have anticipated being sued in

Connecticut for malpractice.

In sum, Plaintiffs have not met their burden to show that the Court has personal jurisdiction over Defendants under either Connecticut's long-arm statute or due process.

Defendants finally assert that this case should be dismissed because the District of Connecticut is the improper venue for this action.  Venue is proper, Defendants remind the Court,

> only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

[ECF No. 16-1 at 17-18 (quoting 28 U.S.C. § 1391(b))].  Defendants argue that "[u]nder this statute, venue is improper in the District of Connecticut because none of the Defendants are or were residents of Connecticut; none of the events or omissions giving rise to the claim occurred in Connecticut; and this Court does not have personal jurisdiction over these Defendants."  *Id.* at 18 (citing Defendants' Affidavits).  Defendants argue "[f]urther, the Eastern District of North Carolina is the proper venue given the Defendants' residence, law practice and it's the location where the alleged acts or omissions occurred."  *Id.* (citing *Maxum Petroleum, Inc. v. Hiatt*, No. 3:16-cv-01615 (VLB), 2017 WL 11447166 (D. Conn. Feb. 2, 2017) (finding venue in Western District of Oklahoma proper when all of the parties resided in Oklahoma and virtually all of the events giving rise to the

23

litigation occurred there)).  Defendants summarize that "if this Court should find personal jurisdiction over the Defendants, this case should be dismissed for improper venue pursuant to Fed. Rule Civ. Pro. 12(b)(3)."  *Id.*

Plaintiffs counter that "the events giving rise to this action," i.e. "Defendants' advisement of Plaintiffs in the sale of an entity which maintained a place of business in Connecticut to a resident of Connecticut," show that the District of Connecticut is the proper forum for this action.  [ECF No. 24 at 12].  Plaintiffs note further that the "State of New York would be a proper forum as Taxaroo's principal place of business," and because the purchase and sale agreement was to be interpreted according to New York law.  *Id.* at 13.  Delaware would also be a proper forum, according to Plaintiffs, as the state of incorporation of Taxaroo, Inc., as would "North Carolina as the judicial district in which all Defendants reside."  *Id.*

The Court finds venue improper in this District as no Defendant resides here, no Defendant is subject to personal jurisdiction here, and "a substantial part of the events or omissions giving rise to the claim" did not occur here.  28 U.S.C. § 1391(b).  As noted, the fact that one of the Plaintiffs resides in Connecticut and received communications relevant to the claims here was purely "incidental."  *Callahan*, 2020 WL 2061882, at *7.

24

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [ECF No. 16] is DENIED, but the Court *sua sponte* transfers this case to the Eastern District of North Carolina.  28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").  As Plaintiffs' allegations against Defendants may have merit, and because Plaintiffs may be able to carry their burden regarding the court's personal jurisdiction over Defendants, points upon which the Court expresses no opinion, the Court finds that the interests of justice require transfer of this case to the United States District Court for the Eastern District of North Carolina, and directs the Clerk so transfer this case.


IT IS SO ORDERED

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 23, 2020.

25